May it please the Court, Shea Christofferson on behalf of Appellant American International Specialty Alliance. Can you speak up a little bit? Yes, Your Honor. The issues here are essentially twofold. One, whether the particular indemnity agreement that the appellee is asserting applies was incorporated into the final contract between school specialty and his client, Kindercare. And the second issue is to whether it is conspicuous and is enforceable. In this instance, Your Honors, this is a situation where every effort was made to try and make the contract enforceable and yet hide the applicable provision in this being the indemnity agreement. Well, let me just ask you a question here. Why is it unreasonable to conclude that where the services distribution agreement says it supplements the vendor information packet, it means that it incorporates the vendor information packet into the agreement. Why is that unreasonable? Several reasons, Your Honor. First, the vendor information packet was a bid that was submitted in 2002 by our client's school specialty. The school specialty submitted the bid and the bid was rejected. Now, what do you mean by that when you say rejected? Is there anything in the record was it just not answered or is there some document in the record that says we reject your bid? Yes, Your Honor, there is. In the excerpts of record, there is rejection of the bid, and that is undisputed by counsel. So the contract offer was not accepted. The Kindercare then contracted with ABC school specialty. I understand that much, and I understand the rest of it, but I wasn't aware that there was an actual literal rejection as opposed to a simple, you know, nonresponse. Yes, Your Honor, it was rejected. The point as to the supplement of the record, too, there was no discussion during the negotiation of the service distribution agreement, the SDA, that the VIP and the terms of the VIP would be those that would be applicable to the contract between school specialty and Kindercare. The word supplement suggests that the pricing and discount terms as set forth in the SDA was what they were going to incorporate from the VIP, and that is consistent with the language of the VIP such that there are several references to pricing and discount terms. And I would point to the excerpts of record 663 and 664 in which it delineates various pricing and discount terms. Those include minimum requirements for invoices, processing Kindercare purchase orders, guidelines for resolving differences in price, quality, specification, quantity, or terms, terms dealing with discrepancies between invoices and purchase orders, charges for processing or handling and shipping, and guidelines for issuing payment. Can I ask what you repeat in your brief several times that this was a rejected agreement and you rejected bid, and that seems accurate. And you say it again now, but you never seem to ascribe any significance to that. I don't know what why that matters exactly. It seems like maybe it should matter, but you don't seem to have a theory about why it matters. I guess, Your Honor, perhaps I passed over the obvious, and that is in contract law, the bedrock principle is offer acceptance, consideration. Right. There was no agreement at that point, clearly. But how does that affect whether or not this later thing that was an agreement can ‑‑ I mean, maybe you could say, well, how can you supplement something that doesn't exist? Precisely, Your Honor. It's a dead letter. How do you resuscitate it if the party is truly meant to ‑‑ But you never make that argument. I mean, that really troubled me, because, frankly, I don't think the argument that you are making right now is a very good argument. But the question of how you supplement something that's a dead letter is an interesting problem. And forgive me, Your Honor, perhaps I should have focused on that more. I just ‑‑ I guess I wanted to address the fact of the supplement aspect of this, but it's true. How is it ‑‑ But supplement at least suggests supplementing something that's there. And all that's there is a piece of paper that's inoperative. Correct. That's right. And so the question would become how is it that you can go ahead and integrate something that's already been rejected. It also begs the question why the parties didn't simply negotiate the VIP. Why didn't there just simply be an exchange of the VIP, included either a blank VIP so that all the terms were set forth, or alternatively the actual VIP that was filled out, presented to school specialty so that they could assess as to whether they wanted a contract. It seems partly intrinsic to the conspicuousness argument, which would be helpful to me if you would go to, because it's hard to say that something ‑‑ If you were conspicuously aware of something that you could easily have thrown in the garbage because it was no longer operative. Correct, Your Honor. And what else will you say about the conspicuousness argument? Could I just address one more point that Your Honor mentioned? There is in the VIP an express incorporation by reference provision. And that's on the excerpt from Record 590. And that incorporation by reference provision essentially lays out ‑‑ This order, including all drawings, specifications, instructions, and other documents referred to herein, and made a part hereof, collectively documents, constitutes the entire agreement. It seems rather inconsistent that you would have this type of incorporation by reference language and then rely on the term supplement by way of the SDA, inherent in ambiguity. To address Your Honor's question in terms of the conspicuousness, the first thing I would point out is the first paragraph on the excerpt from Record 590, under the terms and conditions in which KinderCare sets forth in block lettering, all capped, the entire language asserting that this particular provision is governed by the UCC. Certainly they understood when they wanted to, to make something conspicuous. Contrast that with the terms and provisions, conditions in which the indemnity agreement is set forth in paragraph 13, in which you have a heading that is bolded in all capped. It is the same ‑‑ Is that the only way to make something conspicuous? Not at all, Your Honor. In fact, I think the statute 71.2010, the Oregon UCC, requires not only that the heading be conspicuous, but rather the text specifically be conspicuous. And in fact, the case law also seems to support that, such that we have several cases, and I would cite to the Young, the Siebel, the Anderson, and the Allen Guarantee case, in which the court went beyond simply looking at whether a or set forth in a different font than text of the particular language that was at issue. Here you have a situation where the heading is in the same type size as the rest of the provision. The provision is stuck within the other terms and conditions, 18 of which are set forth in dense type on two pages. There are no other references in the VIP to this particular paragraph. There are no other indications that this particular paragraph is somehow going to be operative, so I would suggest that this is not conspicuous as set forth under the law, both by the Oregon State Courts as well as the District Courts of Oregon. The legal requirement comes from the fact that ‑‑ is it a statutory or interpretive requirement that derives from the fact that this is an indemnity for your own negligence? It's not indemnities in general, but the fact that it's an indemnity for your own negligence that gives rise to this, or what? No. I think it would be more general, such that the statutory requirement as to conspicuousness does not have that extra hook in terms of having to be more conspicuous to the ‑‑ In the indemnity agreement. Correct. Or in any provision, such that a warranty, for example, several cases have addressed that issue. But there's also case law that suggests that indemnities for your own negligence are to be at least looked at skeptically. Correct. Something to that effect. Does that feed into the conspicuousness issue at all? Well, I think certainly it could be a factor that could. The case law doesn't seem to address that particular point, but certainly it would be consistent with that analysis, such that indemnity provisions are going to obviously be interpreted narrowly against the drafter or the beneficiary of that indemnity agreement. So, too, obviously, if you're going to have a conspicuousness problem, if you're not providing that notice, certainly the parties should have to consider that, or a court should consider that for purposes of determining whether that particular provision is applicable. In terms of the ‑‑ Can I ask a procedural question? Do you have a second attorney arguing or just you? It would just be me, Your Honor, and I would ‑‑ I would like to reserve a little bit of time. The one other point that I wanted to raise was the amount of insurance or, back up, the indemnity agreement itself, under layman, some of the particular factors that the court must consider in determining whether an indemnity agreement is going to be applicable are whether the provision itself was specifically bargained for. Here, the undisputed evidence is that it was not. There was no reference to it in the discussions. The experts of record are very clear as to that. If something happened that hadn't been expected, you ‑‑ I think you're putting emphasis on the fact that one offer was made and not accepted, but the company that was later acquired by a company with whom you had done business, that had not been anticipated, so we looked to see what is the status. After one company acquires the other, what's the status? What is the entity that we're dealing with? And you've got an appeal battle in the opinion of a portion of the court when you say to us that we go back to the beginning and we take every step. That was something that was unanticipated as you were making those steps, isn't that? Well, Your Honor, it seems to me that if there's a negotiation that's going forward, they're not just simply relying on an existing contract between ABC School Supply and Kinder Care. Rather, they're saying, well, hold on, no, no, we're going to go back to something that was rejected before. We're not going to offer you this particular bid again. We're not going to give you a blank bid so that you can understand the terms. I think it's a very reasonable point that it should go back and say, well, hold on, folks, offer acceptance consideration. We need to understand the terms. You're essentially saying, well, maybe they could have assumed the contract from the ABC, but they didn't. Well. Kinder Care did not. No, and certainly that was not expressly made known to the school specialty at any time during the negotiations.  They're not now relying on any agreement with ABC. No. And so in terms of laymen, to the extent the indemnity agreement was found to be conspicuous and to get through all these things, I do think that it would have to be construed narrowly. There is nothing in the indemnity agreement that talks about having to indemnify for the negligence of another. The case law is very clear. You have to set that forth in great detail. It would be a fair inference, at least if you weren't applying any heightened standard of clarity, wouldn't it? Because it says cause, and then it has an exception for sole negligence. And it's hard to really think about what you could be talking about if you weren't talking about negligence. True, but to cause something and to be negligent for something are certainly two different things, potentially, such that you could just simply have provided a particular product, but the product is not somehow defective. And I think as the excerpts of records set forth, the evidence here is this wasn't a defective product. And I know that ultimately goes to the actual injury itself and the liability. But I do think you can make a distinction between what is the cause of the harm, i.e., yes, he had the asparagus, the little boy had it in his hand, that was a cause. But really, was school specialty somehow negligent in the sale of that when that item passed all the CPSC standards? It also passed the Bureau of Veritas standards as to sharpness under the CFR. But it would be pretty bizarre to be indemnifying somebody for a cause when a product is negligent in the sale of a product. And I think that's a good point, Your Honor, because I don't think anybody is liable to begin with unless they're negligent. So that's why the inference is one you would ordinarily draw, it seems to me. Perhaps, but you could go to the extreme, Your Honor, such that what if you had an instance where a child picked up the asparagus and poked another one in the eye? Certainly, the instrument was the cause, but was the instrument manufacturer or distributor negligent? I would argue no. The last point that I wanted to address was the total amounts of insurance that's set forth in the insurance requirements for vendors. The million dollars is what was requested by way of that provision. To the extent that provision is found to be incorporated in the final agreement, that provision sets forth the total limit of insurance that was to be applicable for that indemnity agreement. And that's the total or the bottom? I would argue that it's the total, Your Honor. And there are several cases, as set forth not only in Oregon but also elsewhere, would suggest that these contracting parties had a limit on what would be covered under that indemnity agreement. If I may, I'd like to preserve the remaining time. Very much so. May it please the Court. David Ernst on behalf of KinderCare Learning Centers. This Court should affirm the 54B judgment, which was entered dismissing with prejudice the American International counterclaim. The district court correctly dismissed that claim on summary judgment because this indemnity agreement is valid and it's enforceable. The terms and conditions clearly said that it supplemented the vendor's information package. But the vendor's information package was not operative. It had been rejected. Is that not true? I don't think so. Let me give a little more context because I heard you ask about whether it was a dead letter. I did not see in the record where it was specifically rejected. They gave the business to ABC. But in the vendor's information packet itself, ER-717, it specifically talks about these are accepted upon fulfillment of a purchase order. It was still out there. ABC got that particular. Was it not attached to an application to a proposal to sell something particular? No. No. It wasn't. The vendor's information packet got everything set to go, and if they wanted to use this business and buy from this vendor out of that catalog, not asparagus spears, business from their catalog, everything was ready to go except for one thing, price and whether there would be a discount. And that's why when they got to that point that said we're going to use you. All right. So you're saying that it wasn't an offer made in Magenta? Excuse me? So you're saying there was not an offer made in Magenta? No. The what happened was ABC got that particular, at that time, got that business. Then we know that ABC. So then it must have been for some particular business. That's what I'm trying to find out. No. It was. Go ahead. It was for all the business that they, school supplies, all that kind of business. Then, and it says this in the vendor's information packet, and so that vendors were all set up and ready to go. They told them how to do their invoices. Then they decided to go with school specialty. And school specialty had already bought ABC, so they were already operating under that vendor's information packet anyway. But then they signed the service distribution agreement. And at that point they said, okay, here's what we're going to pay, not for products, but for gross sales in the catalog. It talks about that on the first page of the service distribution agreement. So that's where they had to decide what the terms were. And as Judge King said, you know, what the insurer wanted to argue was this will supplement those pricing and information terms. Well, it doesn't say that. It says, and I know you've been over this, at ER 721, it supplements, provides pricing and discount terms to supplement the vendor's information package, not to supplement those terms. In the vendor's information package. So Judge King found that that clearly was a supplement. There's no dispute that no Oregon case law requires that things be incorporated. The VIP was the base document. And the service distribution agreement was then added the, supplemented the price and discount terms. So I'd like to move on then to the conspicuousness issue, if I could. That's the issue that bothers me. Okay. You know, I look at this, and this is 647 of the excerpts, and it's all single space, small type. It is in bold type, indemnity agreement. There's no space between that. Why is that conspicuous? Okay. I'd like to address that. First, probably because this gets copied a lot, you know, and it's probably not as clear to the eye in your version as it was when it was signed. I don't think that argument was made, but I do have clean copies of that. Let's back up for a minute. Yeah. Isn't the fact that this was a document that whether, was at least not something that was in hand at the time of the negotiations, and that the, although it was specifically named since he didn't get the business for which he had submitted this, since they didn't, they could have simply thrown it in the garbage. That seems relevant to the conspicuousness question because it was on a kind of dormant document to begin with. Well, the Vendor's Information Packet does say keep a copy of this, and Judge King Yes, but at the time they didn't think they were getting any business. They were told they weren't. They didn't get the first round of business. ABC got that business, and they bought ABC. Right. Then they got this. But at least ought to go to the conspicuousness question because it was on a separate document that was not one that they had reason at the time at least to look at very carefully before they signed any final terms because they were told they weren't going to be able to sign the final terms at that time. Okay. Well, let me take the Court through how I think that ORS 71.201 is analyzed. There's a lot of cases, and I think they can be distilled to this, and we can go through them all, but I've tried to do that, and I think they can be distilled to this. We know that the word indemnity agreement, those two words, the disclaimer heading is conspicuous as a matter of law, that those two words are conspicuous because 71.201 says that. And all these cases from our Court of Appeals I think distilled to this. If the disclaimer heading is conspicuous, in other words, in all caps, as the statute says, and it fairly describes what they're disclaiming in the subsequent text, even if that text itself is not all caps, then our courts have said that that's a conspicuous provision. And I cite the Atlas Mutual case that's discussed at page 38 and 39 of our brief, the Oregon freeze-dry, the Dyke v. Northwest Chemical, and the Northwest Pine case at 39 and 40 of our brief. Now, the other cases, and these are primarily someone who's injured and is trying to bring a claim and the defendant's trying to disclaim liability, not all of them but most of them, that's a situation where the courts found one or two of the One said read before signing. Another said in the Lundgren case with the health club, it said use of property. And then within that, after the all caps, they had a limitation, we can't be liable. But the courts of which have not upheld this is where either the subheading or the disclaimer title was not conspicuous because it was not in all caps, or in the That's all it said. And the court in that case said that gives the impression of the giving of warranties, not taking them away. I think if you go through each one of these cases, that is the critical element. And here we had indemnity agreement in all caps. After that, we had the text. It gives indemnity. And I would point out it exempts sole negligence. And under the Blanchville case, that's clearly allowed in Oregon. It was very clear. If we're alleged to be negligent along with you, you will defend us, which they did in this case. And they defended us in this case. If we're solely negligent, we don't owe, there's no indemnity obligation, and that's something that's yet to be determined in the district court. But I think, Your Honors, each one of those cases, if you go through Anderson and all the cases that they cited as well, they do support that principle. We know as a matter of law that the words indemnity agreement are conspicuous. They don't argue that to the contrary. What about the fact, well, two other things that seem relevant to me. You bet. One of them is that the, there is case law that says that indemnity agreements that are going to indemnify for your own negligence are at least to be read skeptically. Why isn't that put into the conspicuousness about what should have to be conspicuous? In other words, it just says indemnity agreement, but it doesn't say indemnity agreement to indemnify for negligence. I understand your point. I'm not aware of an Oregon case. Most of the Oregon cases were actually limitations on damages. The only case that I'm aware of that talked about indemnity agreement, I believe, was the young, the Crane case, the young case. And I'm not aware of a case that talks about the issue of your own negligence in the context of conspicuousness. I'm not aware of such a case. Logically speaking, it would seem to me that what would need to be conspicuous is what is unusual about this, and it's not conspicuous. Right. That's why we say indemnity agreement. Now, indemnity means something. And I would. It rarely means, or at least it is usually taken not to mean unless it expressly says so, indemnifying somebody for their own negligence. That's the Oregon presumption, as I understand it. Yeah. I mean, we all agree that under Oregon law, you can, that's upheld. You can, but it has to be clear. It does have to be clear. And Judge King found, and I submit, that this language is abundantly clear. Well, the substance may be, but the heading sure isn't. The what? The heading sure isn't as to that point. The heading says indemnity agreement. The conspicuous heading says indemnity agreement. Contrast that with, for instance, the Lundgren case, which the plaintiffs rely on. It said use of property at the health club. This person was hurt when they fell on a bench, and buried in the use of property was something about, oh, we also won't be liable for your injury. That's a much different situation here. And just one other point on conspicuousness. The Atlas Mutual case, which we rely on, and Judge King talked about in his opinion on conspicuousness. The insurer tried to recover for damages. There was a fire with a kiln. And the language was there shall be no warranties. And the court, and then after that, it said here's the limitation, no consequential damages. It was not conspicuous. It was in regular text. And the court of appeals in that case said the the there shall be no warranties and all caps should have caused a reasonable business person to advert to read what was after there shall be no warranties. And the court upheld the provision in that case. But that was exactly, I submit, like our case.  I'm sorry. The last problem I have is that there is a very conspicuous provision that at least to some degree covers an indemnity question, and that's the insurance requirements for vendors. I not, without getting into the question of how you reconcile the two or whether there's a, whether the second supervenes the first, doesn't the fact that one is very conspicuous is at least a lot less conspicuous have something to do with how you would read this agreement for conspicuousness purposes? I'm going to stick to your narrow question if I think I've got it right. And that is you actually could take the other side of that argument, Your Honor, and that is what's in all caps on that particular page is insurance requirements for vendors. And an argument certainly can be made. What's in all caps? It's on a separate piece of paper. There's a chart. There's underlining. It's a completely separate thing. It's not stuck in the middle of a double-sided, double-columned, small type. Right. ER-720. Yes. I expected at some point in the argument you were going to say conspicuous doesn't mean emphasized. It doesn't have to be emphasized. It does not. It says that in the statute. Yes. And the atlas says the same thing. I was saying that you ought to say it because he's going to rebut, and that's the problem that he's going to have to deal with. It doesn't. Conspicuous doesn't mean emphasized. It does not. It does not. Counsel, you cited the Young case. How do you distinguish the Young case from this case? Here they found it was not conspicuous. Correct. And just let me get my facts right. But the Young case, okay, this was a crane that was leased by the defendant. The indemnity provision was not set out in capitals or bolding. The language was in very light ink. The Court ruled that the provision was not conspicuous. The only thing all caps and bolded was read both sides before signing. That's my point. That's my distillation of all our Oregon cases. What was conspicuous in that case? Read all things before signing. The Court said, well, that's not. That doesn't advert the reader to the particular indemnity provision. So that's why I think the Young case is a different case than what we have here, where I think it's a lot like the Atlas Mutual case. I think I'm happy to address the million-dollar issue. If that's an issue for the Court, I'm happy to address that. I would say this. There is no Oregon law, or I'd like to hear what it is, that says that somehow because there's an insurance requirement, it's somehow with minimum limits, it somehow limits the indemnity obligation. There is no Oregon law that says that. It sets a minimum limit which they can insure. They can choose not to insure, but, Your Honors, the obligation is with school specialty, not their insurers. School specialty. But that's not really the issue. The issue is that this provision, this head of insurance requirements for vendors, that has indemnity language, agrees to indemnify and hold kindergarten harmless. And they're making an argument, which I don't totally understand, to be frank, that that is a different indemnity provision than the other one and ought to be the one that's given credence. I don't understand the argument. Judge King said they clearly cover different things. They clearly cover one covers acts of the vendor. One covers liability arising out of the use of the product. Well, that I don't understand. Because the vendor, what is his act? His act is selling the product. The act that gave liability had something to do with the selling of the, it was the asparagus spear. I mean, that's what the underlying negligence out. Yes, but the problem is that they sold him the asparagus spear. So they're both the same thing. I mean, that's not, it arises out of the product because they sold him the product. They're going to collapse into each other most of the time. Here's why I don't think it matters. Why are they arguing that somehow that's important? Well, their point is that somehow it's ambiguous because in the insurance requirements for vendors, it's a narrower, that's their argument, narrower indemnity obligation. I'm trying to understand. Okay. Well, I don't understand it either, and here's why.  Go ahead. Okay. At ER 716, which is the indemnity agreement, I'll just read one very brief sentence. It says, paragraph 13, neither this section, that's paragraph 13, nor any other provision of this order shall be construed to require indemnity if you're solely negligent. Here's the point. In paragraph 12, it says insurance requirements for vendors. It's very sad, actually. Go ahead. Very sad. But my point was this. If there was something in another part of the terms and conditions that gave a narrower right to indemnity, or you could argue you're always going to be indemnified, section 13 controls. It says neither this section nor any other provision. I think you're out of time. But you are out of time, and I don't understand your argument either. So maybe we should just hold it. That argument I don't understand, because this is an ‑‑ it's from an exception that says that nothing in this section or any other provision shall be read to not have an indemnity, to have an indemnity for that particular circumstance. It doesn't describe the scope of the indemnity provision. It provides an exception to it. So I don't get it. Anyway, thank you very much. Thank you. Your Honors, first, on excerpts of Record 586, the VIP talks about feeling free to make a copy for your records. It's completely reasonable for a company, when it has a bid that's been rejected, to simply discard that particular offer. I know that companies have to essentially kind of maintain a particular amount of space, so it makes sense for them to discard it and not keep it. It shouldn't be considered for purposes of later contracting. Next point, in terms of the hold harmless agreements, we would point out that for purposes of conspicuousness, the law is very clear. A provision is not conspicuous when there is only a slight contrast with the balance of the instrument. Here, that fits it to a T. That case is the Young decision, and it's at 53P3, 465. Here, you have a slightly conspicuous or slightly differential title, as opposed to the actual context or the text of the agreement. The statute, 71.2010, requires the actual text to be conspicuous. It doesn't have to be emphasized, necessarily, but it has to be conspicuous. The other points in terms of the hold harmless agreement that there will be. What makes it inconspicuous here? Here, you have two pages with 18 different terms and conditions that are densely packed, no separation. Yeah, but is one smaller than the other or one larger than the other? All the same size. All the same size. And doesn't that mean that everything in this same size paragraph, each of these paragraphs applies? But that would run counter to the case law that suggests that when you have provisions that need to be conspicuous, under 71.2010, that they need to be conspicuous to the reasonable person. A reasonable person reading through this sea of language would only see, perhaps, the heading indemnity agreement. Who's being indemnified? Are they being indemnified? They've never done business with this entity before. Perhaps they should be, because they have no control over their product once it leaves their hands. I would argue that there is no emphasis of the text of that indemnity agreement. I can say this. You can go home feeling safer that you've represented your client as well as your client can be represented under the posture of this case. So I'm not suggesting you haven't done all you can do. But what we're going to have to do is decide it, and we're going to have to decide it. We aren't going to make new law in this case, I don't think. I'm just one third of the board. But I don't think we're going to make new law. And I think when we look, when we see something that is conspicuous, for us to say it's not conspicuous, it means it has to somehow be diminished from everything else that's farther along. Otherwise, you say nothing is not conspicuous. Your Honor, here I would say you don't have to make new law. The existing law dictates that the provision needs to be conspicuous, and it isn't. Thank you very much. Thank you very much. Thank you both, counsel, for a very good argument in a sad but interesting case. American International Specialty Alliance v. Kinder Care is submitted.
judges: Farris, Nelson D. W., Berzon